UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY M. LONG

        Plaintiff,                              Case No. 05-73683
v.                                               Judge Avern Cohn

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

**I. Introduction**

This is a Social Security case. Plaintiff Larry M. Long (Long) appeals from the final decision of the Commissioner of Social Security (Commissioner) denying his application for Disability Insurance Benefits (DIB). An administrative law judge (ALJ) conducted a hearing and found that Long was not "disabled" under the Social Security Act, 42 U.S.C. § 432. The Social Security Administration's Appeals Council denied review of the ALJ's decision, and Long filed this action for judicial review under 42 U.S.C. § 405(g). Long and the Commissioner filed cross-motions for summary judgment, and the matter was referred to a magistrate judge for review. On October 24, 2006, the magistrate judge issued a report and recommendation (MJRR) that the ALJ's decision be affirmed. Specifically, Long argues that the ALJ's decision was not based on substantial evidence because the ALJ improperly discounted the opinion of his treating physician and instead relied on the opinion of a state agency reviewing

physician. The Commissioner argues that the magistrate judge was correct in concluding that substantial evidence supports the ALJ's decision and asks the court to adopt the MJRR. For the reasons that follow, the Court will adopts the MJRR, and will grant summary judgment in favor of the Commissioner.

## II. Procedural History and Medical Background

Long was born in 1951, and has an eighth grade education with no vocational schooling. He has worked as a janitor and janitorial supervisor. Long's medical records reveal that he began complaining of back pain in 2001 after he slipped on some ice and aggravated a prior back injury. Long also has carpal tunnel syndrome. He has not engaged in substantial gainful activity since his alleged onset date of August 30, 2002. Long filed an application for DIB on December 23, 2002, which was initially denied on March 6, 2003. His application was again denied by an ALJ on April 26, 2005.

Dr. S. R. Kaura is Long's treating physician. Dr. Kaura examined long in August, 2001 after he complained of backaches. Dr. Kaura noted that Long had a history of hypertension, depression, and chronic anxiety, and that he took various medications to treat them. The examination also found that Long had tenderness in his spine and positive straight leg raising test at 40 degrees on the right side. Dr. Kaura prescribed physical therapy and continued use of medication.

In January, 2002, Long's back pain had declined, and he decided to return to work. He went back to work in February, 2002, but by May, 2002, Long began experiencing intermittent but worsening bilateral hand numbness. Dr. Lisa Flaherty, a Board Certified Neurologist, recommended that Long wear wrist splints and get an EMG. The EMG results were consistent with bilateral ulnar neuropathies at the elbows

and bilateral median neuropathies at the wrists.  Dr. Flaherty prescribed medication and massage therapy.

In July, 2002, Long had an MRI on his cervical and lumbar spine.  The MRI of his cervical spine revealed multiple mild anular disc bulges, indicating mild degenerative spondylosis.  Long had normal facet joints and there was no evidence of spinal canal stenosis.  The MRI of his lumbar spine showed multiple mild anular disc bulges with end-plate degenerative changes, some mild disc height loss, and some bilateral facet joint osteoarthritis and neural foraminal narrowing, indicating multi-level degenerative spondylosis.

Dr. Flaherty reviewed the MRIs of Long's cervical spine, and found no evidence of nerve root compression or spinal cord compression.  Further, its condition was within normal limits with no evidence of spinal stenosis or nerve root compression.  Finally, Dr. Flaherty reported that her neurological exam of Long was normal, that the wrist splints appeared to help, and that Long should continue physical therapy and splinting.

Long continued to visit various physicians with complaints of back pain, neck pain, arm pain, and hand numbness.  In August, 2002, Long reported back pain radiating into his right leg, numbness in his right leg, and pain in his hands.  Medication and physical therapy were again prescribed.  In October, 2002, Dr. Kaura observed spinal tenderness.  In January, 2003, Long reported radiating back pain and tenderness, as well as pain in his shoulders, elbows, and hands.  Dr. Kaura noted that Long had a decreased range of motion, positive Tinel and Phalen signs, and a positive straight leg raising test of 40 degrees on both sides.  In 2003 and 2004, Long had various check-up appointments for his back pain.  Medical reports from these check-ups

indicate that Long had ruptured discs, and that prescriptions were filled, but do not include any further examination findings.

A second MRI of Long's lumbar spine was taken on March 31, 2004. Degenerative changes were noted, including variable disc height loss, disc bulges, end-plate signal changes, and focal radial tear, and suspected compromise of mild bilateral nerve roots. However, there was no evidence of significant spinal cord compromise, thus indicating a normal spinal canal.

The record also contains various assessment forms related to Long's limitations. Dr. Kaura assessed Long's physical limitations, and on three occasions (8/21/03/, 12/5/03, & 4/2/04) opined that Long was permanently disabled due to ruptured discs. Dr. Kaura also opined that Long can: (1) lift only five pounds; (2) could sit/stand/walk for only 15 minutes at a time; (3) never climb, balance, stoop, crouch, kneel, bend, or crawl; and (4) occasionally push/pull, reach, handle, and feel. Further, Dr. Kaura noted that such activities cannot be sustained, and that Long must lie down for rest 2-3 times per day for 1-2 hours each time due to fatigue and spinal compression. Finally, Dr. Kaura noted that Long "is unable to work 40 hours a week because of carpel tunnel, bulging disc in spine, degenerative disc disease, [and] nerve damage."

Dr. R. Digby, a state agency medical representative, reviewed Long's medical records and completed an assessment form in March, 2003. Dr. Digby found that Long could: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) stand/walk/sit for six hours in an 8-hour day; (3) occasionally climb, balance, stoop, kneel, crouch, and crawl; and (4) reach in all directions and feel. Dr. Digby also found that Long had limited push/pull abilities with his upper extremities and limited ability for gross and fine

manipulation with both hands.  Finally, he found that Long should avoid concentrated exposure to vibration and avoid all exposure to hazards such as heights and dangerous machinery.

An additional medical report, by Dr. Sumaira Sheik, opined that Long could only sit/stand/walk for 1-2 hours out of an 8-hour work day, could occasionally climb/balance/stoop/crouch/kneel/ben/crawl/push/pull/reach/handle, could frequently feel, and must rest frequently 5-6 times per day for 15 minutes each time.

At the ALJ hearing, Long testified that he experiences back pain which radiated into his leg at an intensity level of five to seven out of 10.  He said that sitting, standing, or walking for prolonged periods of time aggravates the pain.  He also complained of numbness and pain in his upper and lower extremities and sleep disturbances.

As to his physical limitations, Long testified that he could sit about six hours in an eight hour work day and stand in one spot for about an hour.  He indicated that he did not have problems with lifting, and could lift a gallon of milk.  He stated that he could walk only short distances without support.  He says that for relief he received massage therapy, takes medication, and uses an electric stimulator.  Long says that he exercises as much as three times a day to relieve the pain.  Long does light cooking and washes dishes.  He is able to cut the lawn on a rider mower and to drive a car.

In denying Long's application for DIB, the ALJ found that the medical evidence indicated that Long has a back disorder and carpal tunnel syndrome.  While he found these impairments to be "severe" within the meaning of 20 C.F.R. § 416.920(a), he found that they were "not "severe" enough to meet or medically equal, either singly or in combination to one of the impairment listed in Appendix 1, Subpart P, Regulations No.

5

4." In particular, the ALJ rejected Dr. Kaura's medical assessment after finding that it was exaggerated and inconsistent with Long's testimony and the objective evidence. The ALJ further determined that Long could not perform any of his past relevant work, but that he retained the ability to perform a range of "light" work and that there were a significant number of light jobs in the regional economy that he could perform.

The magistrate judge agreed with the ALJ's decision and found that it was based on substantial evidence. The magistrate judge found that the ALJ properly provided specific, legitimate reasons for rejecting Dr. Kaura's assessments because they were not supported by the objective medical evidence and were, in some regards, not even supported by Long's own description of his limitations. In particular, the magistrate judge noted that Long's two MRI's and strength tests supported the ALJ's determination that Long is not disabled.

### III. Standard of Review

Judicial review of a Social Security disability benefits application is limited to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is more than a scintilla and less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

The substantiality of the evidence must be based upon the record taken as a

whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports conclusions reached by the ALJ." Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).

The portions of the MJRR that the claimant finds objectionable are reviewed de novo. See 28 U.S.C. § 636(b)(1)(C); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV. Discussion

### A. Framework for Disability Determinations

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will qualify as "disabled" if, in light of age, education, and work experience, she is unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In identifying whether claimants are "disabled," the Social Security Administration applies the following five-step sequential evaluation process:

    1) whether the claimant worked during the alleged period of disability;
    2) whether the claimant has a severe impairment;
    3) whether the claimant has an impairment that meets of equals the requirements of an impairment listed in the regulations;
    4) whether the claimant can return to past relevant work; and
    5) if not, whether the claimant can perform other work in the national economy.

20 C.F.R. § 416.920(a).

## B. The Parties' Arguments

Long objects to the ALJ's determination that he retains the capacity to perform light work in spite of his severe back impairment and carpal tunnel syndrome. The ALJ determined that Long:

> retains the residual functional capacity (RFC) to perform a range of unskilled light work that allows for a sit/stand option that does not require sitting longer than one and one-half hours at a time or standing longer than one hour at a time and walking farther than on/fourth of a mile at a time. Because of moderate limitations in ability to maintain concentration for extended periods, and carry out detailed instructions due to pain, the claimant is limited to simple, routine, and repetitive tasks, or unskilled work. The work must not involve repetitive use of the hands; or use of vibratory tools; or work at hazardous heights or around dangerous machinery; or bending or frequent climbing of stairs or ramps; or any climbing scaffolds, ropes, or ladders; or kneeling, squatting, crouching or stooping.

Based on this RFC and Long's age, education, and past relevant work experience, the the Vocational Expert (VE) found that Long could work in 2,100 visual inspection jobs and 3,000 security jobs.

Long says that the ALJ erred in reaching this conclusion because he rejected the medical opinion of his treating physician, Dr. Kaura. At the motion hearing on December 13, 2006, Long added that rejecting Dr. Kaura's opinion had the effect of negating the objective evidence that he suffered severe, disabling pain. Long points out that "[t]he opinion of a treating physician is entitled to great weight unless it unsupported by medically acceptable clinical or diagnostic date." Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir. 1991)(internal quotations omitted). Long argues that despite the ALJ's finding, Dr. Kaura's assessment was not contradicted. This is because, according to Long, the ALJ erroneously relied on Dr. Digby's assessment. Long says that Dr. Digby's assessment should not have been given any weight because Dr. Digby was

merely an non-examining state agency physician, who reviewed the medical evidence in the case and filled in the blanks in a pre-printed form.  See Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000)(An ALJ's reliance on the conclusory and unsubstantiated opinion of a non-treating, non-examining medical expert did not constitute substantial evidence to support a finding that the claimant could perform sedentary work); see also, Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995)(the opinion of a non-examining physician cannot by itself constitute substantial evidence that justified rejecting the opinion of either an examining or a treating physician).

Long also points out that the ALJ is obligated to evaluate the findings of a non-examining state agency physician using the same regulatory factors used in evaluating any medical opinion.  20 C.F.R. § 404.1527(f)(2)(ii).  Subsection (d) of the Regulation requires the ALJ to evaluate the physician's opinions based on the following factors: (1) examining relationship; (2) treatment relationship, including (a) length of the treatment relationship and the frequency of examination; and (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. 20 C.F.R. § 404. 1527(d).  As to supportability, the Regulation states that "because non-examining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.  20 C.F.R. § 404. 1527(d)(3).  Long argues that in this case, Dr. Digby never examined Long and therefore has no examining or treating relationship with him.  Moreover, he asserts that Dr. Digby presented no relevant evidence to support his opinion, and did not cite to medical signs and laboratory findings contained in the record.

9

The Commissioner argues that the ALJ's decision was based upon substantial evidence in the record.  First, the Commissioner argues that, contrary to Long's argument that Dr. Digby should not be given any weight, the ALJ is required to consider the opinion of Dr. Digby because of the expertise and impartiality such reviewers bring to the disability determination process, See 20 C.F.R. § 404.1527(f)(1).  Moreover, the Commissioner points out that the ALJ is allowed to rely on the opinion of a reviewing physician to reject the opinion of a treating physician.  See e.g., Comb v. Comm'r of Soc. Sec., 459 F.3d 640, 651 (6th Cir. 2006)(en banc).

Next, the Commissioner points out that the ALJ did not rely solely on Dr. Digby's assessment to discount Dr. Kaura's opinion.  He also relied on Long's testimony which was inconsistent with Dr. Kaura's.  The ALJ found that Long's testimony contradicted Dr. Kaura's medical assessment that Long was not able to find any full time work because he lacked the physical ability to sit, stand, or walk consistently for prolonged periods of time without having to take an unreasonable number and length of rest periods.  He pointed out that Long testified that he had no problems lifting and could sit in a chair for five to six hours during the day, and stand in one spot for about an hour.

The Commissioner also points out that Dr. Kaura's assessment was inconsistent with the objective evidence.  For instance, Dr. Kaura's extreme limitations are inconsistent with the December 10, 2003 MRI,  which showed variable disc height loss and buldging, but showed no evidence of stenosis or canal compression and at L5-SI.  Also there is no evidence of significant compromise of the spinal cord.
Likewise, Long's exhibited mostly full strength in his upper and lower extremities.  Finally, at no point did any physician limit Long in his ability to lift, sit, stand, or walk to

10

the degree of Dr. Kaura.

## V. Conclusion

A review of the record reveals that the testimony and the record taken as a whole supports the magistrate judge's conclusion that the ALJ's determination was based upon substantial evidence. The regulations and case law recognize that the opinion of a physician, including a treating physician, is entitled to great weight only if it is supported by adequate medical data, including medical signs, and laboratory findings, and does not conflict with other evidence. 20 C.F.R. § § 404.1527(d)(2)(3)(4), 416 (d)(2)(3)(4); Walters v. Comm'r of Social Security, 127 F.3d 525, 530 (6th Cir. 1997). Likewise, a treating physician's assessment of a claimant's restrictions may also be rejected to the extent it contradicts the claimant's testimony. See Vega v. Callahan, 975 F. Supp, 1372, 1376 (D. Or. 1997). Here the ALJ acknowledged Dr. Kaura's statements that Long was unable to work and reasonably rejected them on the grounds that they were not supported by objective and clinical findings, and were inconsistent with Long's own testimony to the effect that he was not as severely limited in his physical capabilities as Dr. Kaura opined. The Court agrees that these inconsistencies go against the credibility of Dr. Kaura's report (including his assessment of Long's objective pain).

Moreover, Long has greatly overemphasized the extent of the ALJ's reliance on Dr. Digby's assessment in reaching his decision. The ALJ rests his decision upon the objective evidence -- specifically, the 2003 MRI, and Long's strength tests; and mentions only that Dr. Digby's assessment is consistent with it.

For the reasons discussed above, the Court adopts the findings and conclusion

11

of the MJRR that the ALJ's decision is supported by substantial evidence. Long's motion for summary judgment is DENIED; the Commissioner's motion for summary judgment is granted. Accordingly, the case is DISMISSED.

    SO ORDERED.

                        s/Avern Cohn  
                        AVERN COHN  
                        UNITED STATES DISTRICT JUDGE

Dated:  January 17, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 17, 2007, by electronic and/or ordinary mail.

                        s/Julie Owens  
                        Case Manager, (313) 234-5160